The State of Iowa v. Ross and Mann.

## THE STATE OF IOWA v. ROSS AND MANN.

| 21 | 467 |
| 89 | 97 |

| 21 | 467 |
| 137 | 6 |

1. **Practice:** MOTION. When the record does not show any action of the court below upon a motion filed in a cause, the appellate court will presume that the motion was waived.

2. **New trial:** CHANGE OF VENUE. The Supreme Court will not reverse an order of the court refusing to change the venue of the criminal cause when there is nothing in the record tending to show an abuse of discretion.

3. **Practice:** CERTIFICATE. The certificate of the clerk appended to a transcript of a cause in a change of venue, showed that it embraced all the original papers filed, and a true copy of all the record entries made in said cause : *Held*, that it was sufficient.

4. **Evidence:** CROSS-EXAMINATION. The Supreme Court will not reverse a ruling of the court below, sustaining an objection to a question asked on cross-examination, where the record does not disclose the purpose of the question, and the ruling may have been made in the exercise of the sound discretion in such cases invested in the court.

5. **Criminal law:** WRONGFUL ARREST. That the defendants were arrested without authority, in another State, and wrongfully brought into the jurisdiction of this State, is no defense to an indictment charging them with crime committed in this State.

*Appeal from Monroe District Court.*

FRIDAY, DECEMBER 14.

THE prisoners were indicted, tried and convicted for stealing two horses, the property of Elizabeth Etherage, in Lucas county, on the 20th of July, 1866, and to reverse this conviction prosecute this appeal.

*W. G. Hammond* for the appellants.

*F. E. Bissell*, Attorney-General, for the State.

WRIGHT, J.—I. An application was made for a change of venue, both on account of the prejudice of the judge and of the people of the county (Lucas). The change was ordered to Monroe county (in the same judicial district), but it does not appear that any action was taken or order made upon the application to transfer to another district. Even after the case was pending in Monroe, and though the defendants there applied for another change, because of the prejudice of the people of that county, nothing further was done or asked as to the application based upon the alleged prejudice of the judge. In a word, this motion was never, as far as the record discloses, passed upon nor called to the attention of the court. Under such circumstances, there is, of course, no question demanding our attention. Before defendants could ask a revision of the action of the court below, they should show either some decision or a refusal to decide. In this case there is neither. We can only suppose that the motion was waived.

*1. PRACTICE: motion.*

II. As already stated, there was a petition for a change of venue from Monroe county, and this was overruled. This was verified by three disinterested persons, in addition to the petitioners. and additional affidavits were received on the part of the State, as contemplated by section 4731 of the Revision. Upon this showing, the court, as we are bound to presume, in the exercise of a sound discretion, and looking to the very right of the matter (§ 4733), overruled the application. There is nothing tending to show that there was the least abuse of the discretion thus lodged in the court below. Upon this subject, see *State of Iowa* v. *Ingalls*, 17 Iowa,

*2. NEW TRIAL: change of venue.*

8; *Same* v. *Baldy*, Id., 39; *Same* v. *Ostrander*, 18 Id., 435; *Same* v. *Arnold*, 12 Id., 479; *Same* v. *Knight*, 19 Id., 94, and numerous other cases there cited.

III. It is next claimed that the record and proceedings were not properly certified from Lucas to Monroe county, and for this reason a motion was made to strike them from the files. The objection is, that there is nothing to show them "to be either the copies of the original entries or the original papers."

3. PRACTICE: certificate.

What is meant by this objection we cannot conceive. For the clerk certifies that he sends all the original papers filed, as also a true transcript of all the record entries made in said cause. And this is precisely what the law requires. Rev., § 4736; and see *State of Iowa* v. *Sharp*, 2 Iowa, 454; *Same* v. *Shelleday*, 8 Id., 477.

IV. A witness (Markham) was examined on the part of the prosecution; and after giving an account of the arrest of the prisoners in Missouri, of how they were brought to Iowa, and when and how they were left by him on the evening of their arrival, prior to turning them over to the civil authorities, was asked by defendants: "What further did you do with the horses or prisoners, or either of them?" This was objected to as not proper cross-examination, and the objection sustained.

4. EVIDENCE: cross-examination.

Looking at the whole record, the pertinency of this objection does not very clearly appear. That is to say, we cannot say why the inquiry was not legitimate, and yet the object of the testimony is not disclosed. What it was expected or proposed to prove, was not stated nor remotely suggested. There was some testimony tending to show that a body of men took the prisoners from the guard during the night, with the view of extorting confessions, but whether of this or some other offenses, does not appear. That the witness was one of this company, is suggested rather than established. It is possible that

the court, in view of the right of the witness to be protected from making any statement which would subject him to a criminal prosecution, deemed it advisable to hold a strict rule in the cross-examination. But whether for this reason, or because the object of the inquiry was not disclosed, or because, in the exercise of a sound discretion, the judge deemed it not legitimate cross-examination, we cannot discover, and in a case where there seems to have been the utmost latitude in the examination of all the witnesses, and in view of the discretion that must necessarily be lodged with the judge trying the cause, and cognizant of all the facts, as to the proper limit of cross-examination, we do not feel disposed to interfere with the ruling. Upon this subject, see *State of Iowa* v. *Devine*, 4 Iowa. 443; *Same* v. *Cokely*, Id., 477; *Allen* v. *Bodine*, 6 Barb., 383; 1 Greenl. Ev., § 449.

V. But one question remains, and that relates to the manner of the arrest and the jurisdiction of the court to hold and try defendants. It may be conceded that the prisoners were arrested in the State of Missouri, and brought to this State by force, and against their will, by parties acting without authority, either under a requisition from the Governor or otherwise. After being thus brought to the State, however, they were re-arrested, turned over to the civil authorities, and proper steps taken for their detention and trial. The claim is that this arrest was in violation of law; that the prisoners were brought within the jurisdiction of the State by fraud, violence, and without any semblance of authority or right; and that comity to the rights of a sister State, a just appreciation of the rights of the citizen, and a due regard for the integrity of the law and its administration, demand that courts should, under such circumstances, refuse their aid, and, indeed, that there can be no rightful exercise of jurisdiction over those thus arrested.

5. CRIMINAL LAW: wrongful arrest.

To this claim we make two answers, the one special, the other general.

And, first, when the motion was made to discharge the prisoners on this ground, no facts had been elicited showing it to be well founded. True, the motion itself alleged certain matters, but it was not sustained by the affidavits of the prisoners even, much less by any other evidence. In this state of the record there was, of course, no error overruling the motion. After the facts were developed the objection was not made, nor was any question of the kind raised; and, therefore, because when raised it had no support in the facts, and because, instead of afterward insisting upon it, they rather waived it, the objection cannot avail in this court.

But, secondly, if properly presented, we are not ready to admit its force. The liability of the parties arresting them without legal warrant, for false imprisonment or otherwise, and their violation of the penal statutes of Missouri, may be ever so clear, and yet the prisoners not be entitled to their discharge. The offense being committed in Iowa, it was punishable here, and an indictment could have been found without reference to the arrest. There is no fair analogy between civil and criminal cases in this respect. In the one (civil) the party invoking the aid of the court is guilty of fraud or violence in bringing the defendant or his property within the jurisdiction of the court. In the other (criminal) the people, the State is guilty of no wrong. The officers of the law take the requisite process, find the persons charged within the jurisdiction, and this, too, without force, wrong, fraud or violence on the part of any agent of the State, or officer thereof. And it can make no difference whether the illegal arrest was made in another State or another government. The violation of the law of the other sovereignty, so far as entitled to weight, would be the

same in principle in the one case as the other. That our own laws have been violated is sufficiently shown by the indictment. For this the State had a right to detain the prisoners, and it is of no importance how or where their capture was effected. In the language of CATON, J. (*The People* v. *Rowe*, 4 Park. Cr. R., 253), "The indictment on such a motion is conclusive evidence of the prisoner's guilt, and the court would be guilty of a gross injury to the people if it should discharge him untried." And see the following cases : *Ex parte Scott*, 9 B. & C., 446 ; 17 Eng. C. L., 416 ; *Rex* v. *Marks*, 3 East, 88 ; *Ex parte Krans*, 1 B. & C., 258 ; *State* v. *Smith*, 1 Bailey.

Affirmed.