## Case No. 10,164.

### NEW JERSEY v. NOYES.

[35 Leg. Int. 341; 11 Chi. Leg. News. 9; 17 Abb. Law J. 407; 3 Cin. Law Bul. 680; 12 Am. Law Rev. 819; 24 Int. Rev. Rec. 174, 334.] 1

District Court, D. New Jersey.   May 14, 1878.

INTERSTATE EXTRADITION—LEGALITY OF ARREST.

A fugitive from justice extradited from one state of the Union to another, may be detained by the authorities of the state for prosecution, notwithstanding it may appear that his arrest under the rendition proceedings was without legal authority.

[This was an action at law by the commonwealth of New Jersey, ex rel. the warden of the Essex county jail, against Noyes.]

NIXON, District Judge. I am quite clear that the facts presented by the return and testimony in this case, preclude the court from discharging the prisoner on these proceedings. Whatever may be the opinion of the court in regard to the methods adopted by the agents of the state to obtain the possession of the body of the petitioner,—and I should be sorry to say or do anything which might be construed into disapproval of such methods and proceedings,—it, nevertheless, appears affirmatively that the prisoner is detained by the legal authority of the state to answer certain alleged violations of the criminal laws of New Jersey. The case falls within the provisions of section 753 of the Revised Statutes of the United States, which restricts the writ of habeas corpus to a case, where a prisoner in jail is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof; or is in custody in violation of the constitution or a law or treaty of the United States * * * or unless it is necessary to bring the prisoner into court to testify.

It appears in the petition, return and evidence that the prisoner was brought into the state of New Jersey from the District of Columbia, by persons claiming to act under the constitution and laws of the United States in regard to the extradition of fugitives from justice. The second section of article 4 of the constitution, provides that a person charged in any state with treason, felony, or any other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state whence he fled, be delivered up to be removed to the state having jurisdiction of the crime. The act of congress of February 12, 1793 [1 Stat. 302],—section 5278, Rev. St. U. S.,—was passed to provide the machinery to carry into effect

1 [Reprinted from 35 Leg. Int. 341. by permission. 12 Am. Law Rev. 819. and 3 Cin. Law Bul. 680, contain only partial reports.]

this provision, and it is therein made the duty of the executive of the state or territory, to which a person charged with crime, generally designated in the constitution, has fled, upon lawful demand, to cause the fugitive to be arrested and surrendered up. The alleged fugitive in the present case being in the District of Columbia, the demand was made upon the chief justice of the supreme court, under section 843 of the Revised Statutes relating to the District of Columbia, wherein that officer is directed to deliver up fugitives from justice in the same manner as the executive authorities of the several states are required to do under the extradition act. The demand of Governor McClellan upon Chief Justice Carter, was dated March 11, 1878, and was based upon the allegation that the prisoner stood charged with the crime of perjury, committed in the county of Essex, state of New Jersey; that he had fled from the justice of said state, and had taken refuge within the District of Columbia. It was requested that the petitioner be delivered up to Robert Lang and Andrew J. McManus, who were authorized to receive and convey him to the state of New Jersey, there to be dealt with according to law.

The grounds alleged in the petition for the discharge of the petitioner were, that he was a citizen of Connecticut, residing at New Haven, in said state; and in the latter part of February last he left his home for the purpose of attending to certain business in the city of Washington in relation to the legislation pending before the congress of the United States, and under consideration by a committee of the senate; that he passed openly in the daytime through the state of New Jersey, took rooms at a hotel in the city of Washington, where he remained from day to day in the open and public pursuit of the business objects for which his presence was required at the capital, and attended from time to time before the senate committee, and held conferences with different members of congress, concerning business which he had in hand; that he was thus engaged on the 11th day of March last, and in the evening of that day had retired to his bed as usual, when, at about midnight, he was awakened and disturbed by the entrance of three men into his room, who informed him that they had authority to arrest him and take him to the state of New Jersey, which they did. * * * That the indictments which formed the basis of such extradition proceedings do not charge any crime under any statute or at common law, and that therefore the arrest in the manner aforesaid was illegal, and a violation of the rights of the petitioner as a citizen of the United States. If the return had been made to the writ of habeas corpus in this case that the warden annexed to the writ, issued for the prisoner on his application to the supreme court of the state to be admitted to bail, to wit, that he was held in custody only by virtue of the

commitment issued by the governor to the keeper of the jail of the county of Essex, the sole question presented would be, whether it was competent for this court to inquire into the sufficiency of the evidence upon which the governor of New Jersey and the chief justice of the District of Columbia acted, in making the requisition by the one and the order for the rendition by the other. But the return, as amended, set forth the existence of new facts, which had arisen since the writ was allowed. It not only averred that the prisoner had been delivered into his custody by virtue of the writ of commitment, issued by Governor McClellan, of New Jersey, but also that he was held (1) by writs of capias from the court of oyer and terminer in and for the county of Essex, for the term of April, 1877, and the term of April, 1878; (2) by virtue of orders of said court remanding him to his custody for trial upon the indictments to which he had hitherto pleaded, the tenors of which were annexed, and which were the cause of his detention.

The writ of habeas corpus was tested and allowed April 16th, 1878. It appears by the copies of the papers annexed to the return, that on the 19th day of April the court of oyer and terminer of the county of Essex, caused the prisoner to be placed at the bar to be charged on the indictments for perjury, upon which the requisition had been made, and, on his plea of not guilty, the court had remanded him to the custody of the warden of the jail for trial upon the 8th of May upon the indictments to which he had before pleaded guilty; that on the 26th of April he was again sent to the bar of the court to be charged upon another indictment for conspiracy, and, upon his plea of not guilty, the court had again remanded him to the same custody and control, to be held for trial. The traverse to the return substantially admits the truth of these allegations, but it seeks to break their force by claiming that if the arrest of the petitioner, by means of which he was brought within the jurisdiction of this state, was unlawful, he is entitled to his discharge from custody, and return to his home, notwithstanding he was charged upon other indictments, and has been ordered to be held for trial since the service of the writ of habeas corpus.

We are thus brought to the consideration of the naked questions: (1) Whether a fugitive from justice extradited from one state of the Union to another, on the charge of the commission of a specific crime, can be held by the courts of the state to which he is sent for trial, for another and different crime? And (2) whether such persons may be detained by the authorities of the state for prosecution, notwithstanding it may appear that his arrest under the rendition proceedings was without legal authority? If these inquiries are answered in the affirmative; if the state court, without regard to the lawfulness or unlawfulness of the meth-

ods adopted to obtain the custody of the body of the prisoner, may not detain him for trial upon the same or other indictments charging him with offences against the criminal laws of the state, he has no claim upon this court for a discharge on the ground that his rights as a citizen were violated by parties who secured his person in a foreign jurisdiction other than by due process of law.

Questions were discussed in the argument which may properly arise between governments, as to the construction of the extradition treaties, or between individuals, as to responsibility for the invasion of personal rights, but which, in my judgment, are not involved in the present inquiry. It may be true that where a treaty exists between two independent nations in regard to the surrender of fugitives, or a criminal is given up on the allegation that he had committed a specified crime, good faith between the governments requires that he should not be tried for other offences. It may be true that when a citizen has been placed under restraint without lawful cause, and without due process of law, he can hold every one who caused or contributed to his imprisonment to a strict accountability in a civil action. In the one case the right of asylum is sacred, except so far as it has been yielded by the terms of the international compact, and any abuse or perversion by one government of the privileges of arrest granted by the treaty, is a just cause of complaint on the part of the other. In the other case, so jealous is the law in regard to the invasion of the individual liberty of the citizen, that all unauthorized restraint of his person is followed by damages against the offending party. But here, a court of competent jurisdiction has the custody of a person who is charged with the commission of certain offences against the laws of the state. The answer to the charge is, that some other person has done a wrong to the prisoner, by violating the laws of another state, in arresting him without proper authority. In a criminal case this can hardly be reckoned a pertinent response. A person arraigned for the commission of a felony cannot plead in bar that he ought to be excused from answering the charge because other parties trespassed upon his personal rights. It is confounding of matters which are essentially separate and distinct. It is a claim on the part of the accused that his criminal violations of the law are to be condoned by his personal injuries. It is asking a court to suspend its most responsible duties, to wit, the trial of alleged offenders against the Penal Code of the state, while the persons charged with the crime are instituting preliminary investigations into the methods adopted to bring them within its jurisdiction. Such a course, for obvious reasons, is allowable in a civil suit between private litigants, but, for like obvious reasons, cannot be and

never has been allowed in criminal proceedings, where the object of the prosecution is to punish an offender against the public. On a claim of this sort the court says to the prisoner, "You are going too fast. We will consider one thing at a time, and everything in its regular order. The precise matter which now concerns you and the court is, whether you are guilty of the crime charged against you. As you happen to be found within our jurisdiction, we will first settle that question, and afterwards, if needs be, will inquire into the circumstances attending your rendition for trial, or will leave the respective governments to discuss them, or will remit you to the recovery of such damages as you may be able to obtain in the civil courts for the violation of your rights of person."

All the authorities of Great Britain and the United States. when carefully distinguished and interpreted by their circumstances, support this view of the law. The earliest cases in England to which the attention of the court has been called, are Rex v. Marks, 3 East, 157, before the king's bench, in 1802, and Ex parte Krans, 1 Barn. & C., 258, in the same court in 1823, in both of which it was held that when a party was liable to be detained on a criminal charge, the court would not inquire on habeas corpus into the manner in which the capture had been effected. The Case of Scott, 9 Barn. & C. 446, before the king's bench, in 1829, was thus: A rule nisi had been obtained for a habeas corpus to bring the body of the prisoner in the custody of the marshal, in order that she might be discharged, on the ground that she had been improperly apprehended in a foreign country. It appeared on the return that an indictment for perjury had been found against her in London; that a warrant for her arrest to appear and plead had been granted; that the police officer having the warrants went beyond his jurisdiction, and followed her to Brussels and then arrested her. conveyed her to Ostend against her will, and thence back to England. Chief Justice Tenderden, on discharging the rule, said: "The question is thus, whether if a person charged with a crime is found in this country it is the duty of the court to take care that such a party shall be answerable to justice, or whether we have to consider the circumstances under which she was brought here. I thought, and will continue to think. that we cannot inquire into them." The courts of South Carolina, in the same year, were considering the same question, as appears in the case of State v. Smith. reported in 1 Bailey. 283. In the case of State v. Brewster, 7 Vt. 118, before the supreme court of Vermont, in 1835, an attempt had been made in the court below to have the proceedings in an indictment against the defendant dismissed. on the ground that he was forcibly and against his will, and without the assent of the authorities of Canada, brought from that province. The court held that the matter set up could not avail the prisoner. Dows' Case, reported in 18 Pa. St. 37, is in many of its features quite similar to the one under consideration, but the illegality of the capture could not be set up by the fugitive. The case of State v. Ross, 21 Iowa, 467, was cited also, and no reference was made to the cases of U. S. v. Caldwell [Case No. 14,707], because they had been fully discussed in the argument, and were not considered pertinent in the present instance. They all turn upon the construction of the treaty between the United States and Great Britain, in regard to the extradition of fugitives from justice, and involve the authority of the courts to hold a surrendered fugitive for trial for any other than extraditable offences. It may, however, be remarked, in reference to this question, that by the second clause of article 6 of the constitution of the United States, treaties are declared to be the supreme law of the land, and by the second section of article 3 they are brought as directly within the judicial power as cases in law and equity arising under the constitution and laws of the United States; unless, therefore, there was something in the treaty with Great Britain which required the aid of legislative provisions to give it effect (see [Foster v. Neilson] 2 Pet. [27 U. S.] 253), it is somewhat difficult to understand or endorse the reasoning of the learned judge who decided the case of U. S. v. Caldwell [Case No. 14,707], and especially where he asserts that complaints of the abuses of the extradition proceedings do not form a proper subject of investigation in the courts of the United States.

It is the conclusion of the court, upon principle and authority, that the state court has the right to hold the prisoner for trial for the offence charged against him, without reference to the circumstances under which his arrest was made in a foreign jurisdiction. It necessarily follows that there is no authority here to discharge him on the habeas corpus. Neither the constitution of the United States, nor section 753 of the Revised Statutes, makes any provision for the writ in such a case, and the prisoner must be remanded.