## Case No. 15,928.

UNITED STATES v. ONE COPPER STILL.

[8 Biss. 270;[1] 11 Chi. Leg. News, 9; 24 Int. Rev. Rec. 317.]

District Court, E. D. Wisconsin. Sept., 1878.

INTERNAL REVENUE — FORFEITURE — PERSONAL PROPERTY—KNOWLEDGE OF FRAUD—OWNERSHIP.

1. Personal property situated upon distillery premises and used in the business of illicit distilling is subject to forfeiture by the government, irrespective of its ownership.

2. Neither the owner of personal property, nor his mortgagee, though innocent of any knowledge of its fraudulent use, can maintain a claim thereto paramount to the rights of the United States, in proceedings for the condemnation of the same for use in illicit distillation.

3. Where a statute in direct terms denounces a forfeiture of property as a penalty, the forfeiture takes place at the time the offense is committed, and operates as a statutory transfer of the right of property to the government.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

This was an information against certain property described as one copper still, one copper column, one mixing tub, one dumping tub, one alcohol tub, and other property of a similar character, seized at the rectifying house of the South Side Re-distilling Company, on July 2, 1877. The information alleged:

[2] [That on the 2d July, 1877, and during the months of November and December, 1876, and January, February, March, April, May and June, 1877, Richard Hatzfeld was carrying on the business of a distiller at the said rectifying house with intent to defraud the United States of the tax on the spirits distilled by him; that is to say, that he distilled spirits from molasses during the period before mentioned, at said rectifying house, and in such business used and employed the property before mentioned, and that all of said property was found on the day of seizure in the rectifying house, or in the building, room, yard and inclosure connected therewith, and used with or constituting part of the premises on which the rectifying house was situated. That at the date of the seizure and for six months previous, Hatzfeld carried on the business of a distiller at the rectifying house, without having given the bond required by law. That after having given a notice to engage in the business of rectifying spirits at said rectifying house, Hatzfeld, on or about November 1st, 1876, entered into a conspiracy with other parties, by means of which molasses was purchased and conveyed to the rectifying house to be manufactured into alcoholic spirits, and which were so manufactured and distilled by Hatzfeld at said place, in violation of law.

[It was then averred that by reason of the premises, and of the statutes of the United States, the property mentioned became forfeited to the United States, and the information, in suitable terms, prays for the usual process, and that the property may be condemned as forfeited.

[On the 7th day of August, 1877, and previous to decree and sale, the present petitioners claiming to have a mortgage upon a portion of the property described in the information, intervened by petition which alleged the following state of facts: That the property was seized by the collector July 2d, 1877, and turned over to the marshal July 7, for the purpose of condemnation under the provisions of section 3281 of the Revised Statutes. That on the 10th April, 1877, one Carl Delmanzo was the owner of a portion of said property, and to secure to one Hugh P. Reynolds the payment of $800, executed to Reynolds his promissory note for that amount, payable in one year, with interest at ten per cent., and also executed to him a chattel mortgage upon the undivided half of so much of said property as is described as one copper still, one boiler pipe, rectifying tubs, one steam pump and all tools, pipes, and fixtures upon the premises described, which mortgage was given to secure the payment of the note. That prior to the 2d July, 1877, Reynolds indorsed and transferred the note and mortgage to petitioners, who have since been the bona fide holders of the same. That the mortgage was not recorded, but was given to secure a bona fide indebtedness, and that the property covered by it forms part of the property claimed to have been forfeited to the United States. The petition then alleged that neither the petitioners nor Reynolds were parties to any attempt to commit a fraud upon the revenue laws, or to violate any law, and were not cognizant of any fraud or attempt to defraud the United States until after the information was filed, and were without knowledge as to whether Hatzfeld had violated any law as charged in the information. That the note and mortgage remain unpaid, and that there is due to petitioners thereon, $800, as principal, except the sum of $185 paid thereon with interest. The prayer of the petition was that in case the property should be condemned and sold, such condemnation and sale might be made subject to petitioners' rights and alleged lien which were claimed to be paramount, and that upon sale the petitioners might be paid from the proceeds, the amount claimed to be due them as a first lien upon the property. This petition having been filed before decree and sale, the court was asked by petitioners' counsel to then adjudicate their rights, but it was the view of the court that decree should be entered, and that the sale had better proceed, and that thereafter the rights of the parties should be passed upon and with the same force and effect as if adjudicated when the petition was filed. Objections having been filed by the attorney for the United States to the petition, the petitioners' case was to be determined as if heard before sale, their rights, if any, being unprejudiced thereby. The objections to the petition were, that under the statute applicable to the case, the petitioners could not acquire any rights in the property in question, in the manner set forth in the petition, and that it appeared from the petition that Delmanzo did not claim to have any title to said property until after the same had been forfeited to the United States, and at a time when he could not acquire any title thereto as against the United States.] [3]

G. W. Hazelton, U. S. Dist. Atty.

Murphey & Goodwin, for petitioner.

DYER, District Judge. Considering the case precisely as it stood before condemnation and sale, what were and are the rights

[2] [From 11 Chi. Leg. News. 9. 8 Biss. 270, gives only a condensed statement of the allegations.

[3] [From 11 Chi. Leg. News, 9.]

of the parties? The information charged violations of law by Hatzfeld, who was in possession of the property. By non-appearance and default, he confessed the allegations of the information. The property was therefore liable to forfeiture, and was forfeited to the United States, so far as he and his interests were concerned. The offenses producing the forfeiture were committed in the several months between November 1, 1876, and July 2, 1877. On the 10th of April, 1877, admitting the allegations of the petition to be true, Delmanzo was the owner of a portion of the property used by Hatzfeld in the business, and on the premises, and on that day made the mortgage thereon, now claimed to be a lien paramount to the interest of the United States. Neither the petitioner, nor Reynolds the mortgagee, was a party to the alleged illicit manufacture of spirits, or had any knowledge thereof, but both were innocent parties holding the mortgage in good faith to secure a bona fide indebtedness.

3 [It was contended on the argument by counsel for petitioners, that in analogy to proceedings in admiralty as authorized by the 34th rule in admiralty, petitioners should be permitted to contest the existence of the alleged causes of forfeiture; i. e. the existence of the alleged facts which rendered the property liable to seizure. The claimant, Hatzfeld, was the distiller possessing and using the property; as before remarked, he made no defense to the information. He confessed its allegations. By non-appearance and default he admitted the illicit transactions charged against him which made the property liable to seizure. And not only is this so, but no issue is made upon the merits by the present petitioners. They merely aver their own innocence of any fraud, and the innocence of the mortgagee. It is not in any manner denied that Hatzfeld committed the offense charged in the information. How, then, when no issue is made upon the question can these intervenors be heard upon such an issue? Admitting that under the rules and practice in admiralty, a person having either a proprietary interest or a mere lien, might "according to the course of admiralty proceedings," contest a forfeiture by seeking to show that no original causes of forfeiture existed, it could only be done upon suitable allegations propounding that issue. As the case is presented, we must then accept as facts the possession by Hatzfeld, at the time alleged, of the property in question; its use by him in the illicit distillation of spirits, as charged, and therefore that the alleged grounds of forfeiture existed. Further, that the mortgage lien set up by the intervenors was attempted to be created by Delmanzo, as the owner of an undivided interest in the property, that petitioners are the holders in good faith by assignment from Reynolds of the mortgage in question, and that both Reynolds the mortgagee, and the petitioners were ignorant of the alleged violations of law by Hatzfeld, and in their relations to the property and to the alleged mortgage lien, are innocent parties. Upon this state of facts, is the mortgage to be recognized as a lien paramount to the claim of the United States, and should the forfeiture and condemnation of the property be held subject to the mortgage interest of the intervenors? The bona fides of the mortgage being shown, it is claimed by the learned counsel for the intervenors, that the government can only forfeit and have condemned the interest of Hatzfeld in the property, and as he did not own the interest of the mortgagee, that interest is not and cannot be forfeited by reason of illegal transactions on the part of Hatzfeld.] 4

Upon this state of facts, is the mortgage to be recognized as a lien paramount to the claim of the United States, and should the forfeiture and condemnation of the property be held subject to the mortgage interest of the intervenor?

The good faith of the mortgage being shown, it is claimed by the learned counsel for the intervenor, that the government can only forfeit and condemn the interest of Hatzfeld in the property, and as he did not own the interest of the mortgagee, that interest is not and cannot be forfeited by reason of illegal transactions on the part of Hatzfeld.

Section 3281, Rev. St., provides, that "every person who carries on the business of a distiller, without having given bond as required by law, or who engages in or carries on the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or of any part thereof, shall, for every such offense, be fined * * * and imprisoned. * * * And all distilled spirits or wines, and all stills or other apparatus fit or intended to be used for the distillation * * * of spirits * * * owned by such person, wherever found, and all distilled spirits or wines and personal property found in the distillery or in any building, room, yard or inclosure connected therewith, and used with or constituting a part of the premises; and all the right, title and interest of such person in the lot or tract of land on which such distillery is situated, and all right, title and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or who has connived at the same, and all personal property owned by or in possession of any person who has permitted or suffered any building, yard or inclosure, or any part thereof, to be used for purposes of ingress or egress to or from such distillery, which shall be found in any such

building, yard or inclosure, and all the right, title and interest of every person in any premises used for ingress or egress to or from such distillery, who has knowingly suffered or permitted such premises to be used for such ingress or egress, shall be forfeited to the United States."

By this section, a forfeiture is denounced, first of spirits, wines, stills and other apparatus owned by the distiller, wherever found; second, of all distilled spirits, wines and personal property. found in the distillery, or in any building, room, yard or inclosure connected therewith, and used with or constituting a part of the premises; third, of all the right, title and interest of the distiller in the lot or tract of land on which such distillery is situated; fourth, all right, title and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or who has connived at the same; fifth, all personal property owned by or in the possession of any person who has permitted or suffered any building, yard or inclosure, or any part thereof, to be used for the purposes of ingress or egress to or from such distillery, which shall be found in any such building, yard or inclosure; and, sixth, all the right, title and interest of every person in any premises used for ingress or egress to or from such distillery, who has knowingly suffered or permitted such premises to be used for such ingress or egress.

Thus it will be seen, a distinction is made in some respects between real estate and personal property. As was said by Judge Woodruff in U. S. v. Distillery at Spring Valley [Case No. 14,963]: "In this section, congress seems to have anticipated a possible discussion, whether it was intended to forfeit property found upon the premises, or used for the purposes of distillation, not belonging to the distiller, and to have purposely been so explicit as to preclude inquiry into mere questions of title, and at the same time, in respect to the real estate, to protect one whose land, under lease or out of possession may, without his knowledge and consent, or perhaps even against his will, when he has no power to prevent, be used in or for the purposes of a distillery."

Further, in the same opinion it is said, that the second of the foreitures enumerated, "is declared irrespective of ownership. It plainly includes property not owned by the distiller. All spirits, wines, stills and other apparatus owned by the distiller, had already been declared forfeited, whether found on the distillery premises or not. It would have been meaningless to declare again. that the same should be forfeited when found there. Spirits, etc., owned by the distiller are brought into distinct contrast with the other spirits, etc., named. The latter are only forfeited when found on the distillery premises; the former are forfeited wherever found."

Such is the construction, that has been placed upon this statute, and in view of its plain provisions, no other, in my opinion, is sound. Now, applying the law, as so construed, to the present case, the following conclusions necessarily result. Taking the averments of the information as undenied, the alleged infractions of law were committed, both before and after the making of the mortgage in question. Where a statute in direct terms denounces a forfeiture of property as a penalty, the forfeiture takes place at the time the offense is committed, and operates as a statutory transfer of the right of property to the government. U. S. v. 56 Barrels of Whiskey [Case No. 15,095]. And in the case just cited it was so held against persons who had in good faith purchased the property before the commencement of suit for condemnation. The property in question was therefore already forfeited to the United States when the mortgage was made. It was so forfeited as to both Hatzfeld and Delmanzo, because, as we have seen, the forfeiture of such property occurs irrespective of ownership. If Delmanzo's ownership could not avail against the forfeiture, then he could create no lien that would be operative against it, and his mortgagee and the assignee of the mortgage occupy no better position than does the owner and mortgagor. These conclusions are only to be avoided by showing that no grounds of forfeiture existed, and upon this question no issue is made. The objections to the intervenor's petition must be sustained.