All concur, except RUGER, Ch. J., not sitting, and MILLER, J., absent.

---

## Executive Chambers.

*August,* 1886.

## MATTER OF BROWN.

### EXTRADITION.

A fugitive from justice who, without force, has been enticed into the State by false and fraudulent representations on the part of the complainant or some one interested in the prosecution, comes voluntarily within the State, and may be arrested in and extradited from the State.

A person who fled from the State of Pennsylvania into Canada as a fugitive from justice, upon coming into this State may be extradited to Pennsylvania.

APPLICATION to Governor David B. Hill by Daniel Brown, petitioner, to revoke a warrant issued preliminarily to the extradition of petitioner.

The facts appear in the opinion.

*John E. Pound,* for the petitioner.

*C. L. Baker,* district attorney of Erie county, Pennsylvania, in opposition.

HILL, Governor.—The governor of Pennsylvania has issued his requisition upon me for the surrender of Daniel Brown, an alleged fugitive from justice, charged in that State with the crime of perjury.

Brown was found in this State, and has been arrested and is held awaiting the decision of an application to revoke the warrant preliminarily issued by me. After taking evidence and hearing counsel on both sides, I find that the following facts are satisfactorily established:

*First.* That the prisoner fled from the State of Pennsylvania to Canada to avoid arrest on a prosecution for perjury, and is to be regarded as a "fugitive from justice" within the meaning of the Constitution and the laws.

*Second.* That while sojourning in Canada he came into this State, where he was immediately arrested at the instance of the complainant in the perjury case; that he was induced to and did come into this State by the false and fraudulent representations of certain persons who were hired by such complainant to decoy him into this State from Canada. There was no force used, but such persons assumed to employ the prisoner to peddle for them, and then, upon the pretense that he was going peddling, was persuaded to cross the Niagara river with them and come into this State, they representing that such river was the "Grand River," and that by crossing it he would still be in Canada, and he believing such representations.

Upon this state of facts the question arises: What is the law applicable thereto?

I am unable to find any precedent or express authority to govern this precise case. Had the prisoner been forcibly brought into this State from Canada—in other words had he been "kidnapped" within the meaning of the statute, it is believed that a case would have been presented requiring the discharge of the prisoner.

Jurisdiction cannot be acquired by the forcible bringing of a party into the State. Neither can it be obtained by acts which would constitute a crime in both countries. The prisoner could not be said to have "fled" into this State if he had been forcibly brought here. But in this case there was no force used and the prisoner came *voluntarily*, although he was deceived and misled in coming.

I am aware of the general rule applicable to civil cases that a party must not be brought within the jurisdiction of a court by trick or fraud for the purpose of having civil process served upon him, and that a service obtained by such means will be set aside.

The reason upon which this just and salutary rule is founded

is that service of civil process is for the personal benefit of. a litigant, and that jurisdiction should be honestly and fairly obtained by him, and if acquired in any other manner it will not be recognized, but the same will be set aside, because a party must not be permitted to take advantage of his own wrong.

This rule does not seem to have been extended to criminal cases. A criminal action is not prosecuted for the benefit of any individual, but for the protection of the whole people. The acts the complainant do not necessarily bind the people. The case may be prosecuted irrespective of the complainant's wishes, and the prosecution are not responsible for his proceedings unless they are connected with his testimony in the case, or have some bearing upon such testimony any more than they are for the conduct of any other witness in the case.

The question is presented whether the people must refrain from arresting a "fugitive from justice" simply because the complainant or some one interested in the prosecution has, in the absence of force, enticed the prisoner into the State by some false and fraudulent representation.

So long as the prisoner comes *voluntarily* into the State, it would seem that the people are not bound to inquire further as to the means or inducements which some witness or third person may have used or held out to induce his coming, before they are permitted to arrest him upon a criminal charge. The case is to be considered the same as though the prisoner had fled from this State into Canada and had then returned here. It makes no difference that he fled from a sister State rather than from this State. It is sufficient that he is a "fugitive from justice" and is found in our own State.

The prisoner was morally guilty of a wrong against the administration of justice when he fled from the State of Pennsyvania to avoid prosecution for a crime there charged against him. Being within the jurisdiction of a well known process by which he may be returned to the State from whence he fled, it is not, so far as the State is concerned, it seems to me, an answer to the prisoner's wrongful act and to the enforcement of legal process to correct that wrong, that the prisoner was

induced to come where such process might be served by an independent act, by an individual or individuals, which operated to deceive him. The question seems to be settled, in principle, by authority. 1 *Bishop Crim. Proc.* 3d ed. § 224; People *v.* Rowe, 4 *Park.* 253; State *v.* Ross, 21 *Iowa*, 467, 470; Ker *v.* People, 110 *Ill.* 627, 637–643; 51 *Am. Rep.* 706, 709–714; *Ex parte* Scott, 9 Barnwell & Cresswell, 446; 1 *Bishop Crim. Law*, 7th ed. § 135; see, also, LaGrave's Case, 59 *N. Y.* 110; 38 *Am. Rep.* 720, n.; Cases cited in LaGrave's Case, 45 *How.* 314; 14 *Abb. N. S.* 343, n. Kidnapping an individual is by law a legal *crime* against the sovereignty in which it is perpetrated, and is punishable, by the State in which the offense is committed, as a crime. It consists of overt acts within the territory of the offended sovereign. Fraud by one individual upon another affecting his property or personal rights is not a crime, punishable as such, by the State, except in certain cases specified by statute, of which the case under consideration is not one. It is suggested that the Dominion government of Canada may require a return of the prisoner. The answer is that this is a proceeding solely between this and a sister State. If the Canadian government shall see fit to take action in the matter, it must be to, and the steps to be taken thereon must be by the Federal government. People *v.* Rowe, 4 *Park.* 254; Ker *v.* People, 110 *Ill.* 637; 51 *Am. Rep.* 709–714; Matter of Scott, 9 *Barnwell & Creswell*, 448; La-Grave's case, 59 *N. Y.* 116. But even if I had a right to consider the suggestion, I do not see how the Canadian government could legitimately ask the prisoner's return. Private frauds between individuals are not the subject of international intervention. The arrest was not made upon Canadian soil. The prisoner in this State was justly amenable to process which will compel him to submit to the usual investigation in Pennsylvania, of the crime charged against him. No offense was committed against the laws of Canada, nor were its rights as a sovereign State in any manner invaded. The unjustifiable act, if any, was by one or several individuals against another individual and his individual rights. Those of the public were not invaded or affected except remotely, as it might be the duty or

to the interest of a government to prohibit by law frauds not criminal. I have the physical power, of course, to override or disregard the decisions of the courts of this and other States, but it does not become me to do so. The higher the position of one called upon to administer law, the more important it is that he should submit to authoritative declarations thereof, particularly when all the States which have spoken are in unison upon the question, and his action contrary thereto would destroy the established uniformity.

Each case must be determined upon its own facts and merits. While the means used to induce the prisoner to leave Canadian soil were unjustifiable, and morally deserve severe reprobation, they nevertheless were private acts between individuals which cannot prevent the State from performing its public duty to another State.

While the law should be careful in protecting the rights of citizens charged with crime, especially where such citizens are residents of the State and are seeking a speedy trial, yet there is no propriety in the adoption of that construction of the law that requires the exhibition of any great tenderness towards those who are charged with crime, who do not desire any trial, but are fleeing from justice.

While such persons should not forcibly be brought into our jurisdiction, and should not be apprehended by any means involving a violation of criminal law, yet there does not seem to be any good reason for otherwise shielding or protecting them from arrest.

If, when fleeing from justice they are induced, persuaded or misled into coming into this State and are thereby caught, they nevertheless *voluntarily* come into the State and are properly without remedy. It would be a strict rule indeed, which would in all possible cases prevent the deceiving, misleading or decoying of a fleeing criminal for the purpose of securing his apprehension. Such methods are sometimes the only means by which his presence can be obtained. The law in its desire to punish the guilty will not scrutinize the methods employed in securing the offender so long as no criminal law is violated, and will not in such cases enter into any investigation of such

methods, even though it might disclose the fact that the prisoner was over-persuaded, unduly influenced or grossly deceived and misled in his coming into our State. If the prisoner in his weakness, credulity or ignorance yields to the persuasions or misrepresentations of those who are endeavoring to capture him, and voluntarily comes into our State, and is arrested, he has no one to blame but himself. The law has never been construed to prevent the apprehension of a criminal by means of artifice, trick or misrepresentation.

The sanction of any other doctrine would seem to invite interminable inquiry and open up a prolific field of investigation.

If, before the arrest of a fugitive can properly or safely be effected, it must first be ascertained whether any deception has been used in securing his presence in this State, that question would be likely to be injected into nearly every case of extradition where the fugitive recently came from another State or country, and the time of the Executive would be greatly occupied in such hearings. If deception in inducing a fugitive to come into this State is to vitiate an arrest here, the question would be presented how much or what degree of deception is required? Is every mistatement that may have been made to the prisoner prior to his coming to be regarded as material and sufficient to entitle him to a discharge? Would not the pretense of his having been in some degree misled or imposed upon be set up in almost every case where the prisoner temporarily came into the State? It does not seem reasonable that the law contemplates that an extradition of a fugitive should be thus complicated and embarrassed.

While the methods adopted in this case in the apprehension of the prisoner are not to be commended, yet as they are not legally objectionable and the prisoner having been " found " within the State to which he must be deemed to have " fled," it follows that it becomes my duty to respect the demand for his surrender made upon me by the Governor of Pennsylvania.

NOTE.—In the appendix to this volume will be found the rules of the Executive Chamber relating to applications for extradition and also for pardons. A strict compliance with these rules will prevent much delay.