Argued February 16, affirmed March 23, rehearing denied July
27, 1926.

# STATE v. C. H. OWEN.

### (244 Pac. 516.)

**Indictment and Information—Indictment for Misapplying Bank
Funds, Following Words of Statute, Sufficiently Informs De-
fendant of Nature of Crime Charged, and is a Valid Accusa-
tion (§ 6187, Subd. [c], Or. L.).**

1. Indictment for aiding officer in misapplying bank funds, fol-
lowing words of Section 6187, subdivision (c), Or. L., sufficiently
informs defendant of nature of crime charged, and is a valid ac-
cusation.

**Criminal Law—Crime of Aiding in Misapplying Bank Funds Held
Consummated in Oregon, Where Check on Which Prosecution
was Based was Drawn on and Paid by Oregon Bank, Though
Drawn by Defendant While in California (§ 1381 and § 6187,
Subd. [c], Or. L.).**

2. Where check drawn by defendant, while in California, on
Oregon bank in which he had no funds, was paid by Oregon bank,
crime of aiding in misapplying bank funds under Section 6187,
subdivision (c), Or. L., was consummated in Oregon, and defendant
was subject to prosecution in Oregon under Section 1381.

**Embezzlement—Legislature may Protect Citizens Against Misappli-
cation of Bank Funds, and may Make It a Crime for One
Out of State to Aid Another in State in Commission of Of-
fense Created (§ 1381, and § 6187, Subd. [c], Or. L.).**

3. It is competent for legislature to protect citizens against acts
aiding in misapplication of bank funds under Section 6187, sub-
division (c), Or. L., and legislature may make it a crime for one
out of state to aid and abet another in state in commission of of-
fense thus created as provided in Section 1381, Or. L.

**Criminal Law—Objection to Jurisdiction of Court Based on Method
by Which Defendant Happened to be in State cannot be Made
by Defendant Charged with Violating Criminal Laws of State
(§ 1381, and § 6187, Subd. [c], Or. L.; Const. U. S., Art. IV,
§ 2).**

4. Where defendant was not in Oregon at time of drawing check
on which indictment was based under Section 6187, subdivision
(c), Or. L., and was extradited from Utah, he cannot object to
being tried in Oregon on ground that he had not fled from justice
within meaning of Constitution of the United States, Article IV,
Section 2, or that he was not "found" in Oregon within meaning of
Section 1381, Or. L., since courts of state having actual custody
of a defendant charged with violating its criminal laws are not
concerned in trial of such charges as to how defendant happened
to be within state boundaries.

Criminal Law—Defendant in State, Accused of. Crime Therein, is in State, Irrespective of How He Came or was Brought There.

5.  When defendant, accused of violating criminal laws of state is in the state, he is in the state, irrespective of how he came or was brought ·there, since criminal act of bringing defendant· into state does not excuse his crime.

Embezzlement—Crime of 'Aiding Cashier in Misapplying Bank Funds Requires Proof of Guilt of Cashier and Criminal Participation by Defendant in Cashier's Offense (§ 6187, Subd. [c], Or. L.).

6.  In prosecution under Section 6187, subdivision (c), Or. L., for aiding and abetting cashier of bank in misapplying bank funds, it is necessary to establish guilt of cashier and to prove criminal participation of defendant in aiding cashier in commission of his offense.

Embezzlement—Crime of Aiding Cashier in Misapplying Bank Funds Requires Showing That Defendant Knew of Cashier's Crime (§ 6187, Subd. [c], Or. L.).

7.  In prosecution under Section 6187, subdivision (c), Or. L., for aiding and abetting cashier in misapplying bank funds, defendant must be shown to have some knowledge of criminal enterprise of cashier, the principal offender.

Embezzlement—Evidence Held to Present Jury Question as to Whether Defendant Knew That Drawing of Check on Bank Without Funds to Meet It Would Result in Injury to Bank (§ 6187, Subd. [c], Or. L.).

8.  Iu prosecution under Section 6187, subdivision (c), Or. L., for aiding in misapplication of bank funds · to payment of a check drawn by defendant without funds in bank to meet it, evidence *held* to present jury question whether defendant knew that condition of his finances was such that drawing of check .would result in injury to bank.

Embezzlement—Overdraft Does not, as Matter . of Law, Violate Statute Making Aiding and Abetting in Misapplication of Bank Funds a Crime (§ 6187, Subd. [c], Or. L.).

9.  Overdraft is not necessarily and conclusively, as matter of law, a violation of Section 6187, subdivision (c), Or. L., making aiding in misapplication of bank funds a crime.

Embezzlement—Intent is Essence of Crime of Aiding in Misapplication of Bank Funds, and Defendant, Knowing of Inability to Meet Overdraft and That Bank Would Suffer Loss by Paying His Check, is Presumed to Intend Such Consequences (§ 6187, Subd. [c], Or. L.).

10.  Essence of crime of aiding in misapplying bank funds under Section 6187, subdivision (c), Or. L., so far as aider is concerned, is intent attaching to transaction so that defendant, knowing of his inability to meet large overdraft, and knowing that ordinary

5.  See 8 R. C. L. 97.

result of paying his check would cause bank to lose amount of check, is presumed to intend such consequences.

### Criminal Law.

11.   Defendant in criminal prosecution is presumed to intend ordinary consequences of his voluntary acts.

### Criminal Law—Refusal to Give Requested Instruction Already Given is not Error.

12.   Refusal to give requested instructions, which were already given in previous requested instruction or embodied in court's charge, is not error.

### Embezzlement—Requested Instruction, in Prosecution for Aiding in Misapplying Bank Funds, to Acquit Unless Defendant Had Reason to Believe That His Check Would be Paid With Bank Funds and not Cashier's Funds, Held Properly Refused as Confusing (§ 6187, Subd. [c], Or. L.).

13.   In prosecution under Section 6187, subdivision (c), Or. L., for aiding in misapplication of bank funds to payment of check drawn by defendant without funds in bank to meet it, requested instruction to acquit, unless defendant had reason to believe that check would be paid with bank funds and not funds of cashier, was properly refused as confusing, since every check on a bank is request to pay amount out of bank funds.

### Criminal Law — Requested Instructions That When Two or More Persons are Engaged in Unlawful Act, They may Both or Only One be Guilty, Held Properly Refused.

14.   Requested instruction that, under some circumstances, two or more persons engaged in doing unlawful act may both or only one be guilty, was properly refused, since, if both are engaged in unlawful act, both are participants therein.

### Criminal Law.—Requested Instruction, Requiring Acquittal if Testimony of Accomplice is Unsupported on Any Material Fact by Other Evidence Held Properly Refused as not Required by Statute Concerning Corroboration of Testimony of Accomplice (§ 1540, Or. L.).

15.   Requested instruction, requiring acquittal of defendant if testimony of accomplice is unsupported upon any material fact by other evidence, was properly refused as erroneously requiring state to make out *prima facie* case independent of testimony of accomplice, whereas Section 1540, Or. L., requires only that accomplice be corroborated by such other evidence as tends to connect defendant with commission of crime.

### Criminal Law—Testimony of Accomplice may be Relied on, if Corroborated by Evidence Tending to Connect Defendant With Crime (§ 1540, Or. L.).

16.   Under Section 1540, Or. L., testimony of an accomplice may be relied on, if he is corroborated by evidence tending to connect defendant in some way with commission of crime.

---

11.   See 8 R. C. L. 173.
12.   See 14 R. C. L. 751.

Criminal Law—Requested Instruction That Accomplice cannot Furnish Any Evidence Sufficient in Itself, and Unsupported, to Justify Verdict Against Defendant, Held Properly Refused.

17. Requested instruction that accomplice cannot furnish any evidence that would be sufficient in itself, and unsupported, to justify verdict against defendant, was properly refused; there being a distinction between testifying and furnishing evidence.

Criminal Law—Requested Instruction, Requiring Testimony of Accomplice to be Corroborated at Every Point, Held Properly Refused.

18. Requested instructions, requiring testimony of accomplice to be corroborated at every point, held properly refused as stating rule as to support of accomplice too broadly.

Criminal Law—Requested Instruction, in Prosecution for Aiding in Misapplying Bank Funds by Drawing Worthless Check Thereon, to Acquit if Bank Consented to Issuance of Check at Time It was Cashed, Held Properly Refused (§ 6187, Subd. [c], Or. L.).

19. In prosecution under Section 6187, subdivision (c), Or. L., for aiding in misapplication of bank funds to payment of a check drawn by defendant without funds in bank to meet it, requested instruction to acquit if bank consented to issuance of check at time it was cashed held properly refused as invading province of jury and declaring as matter of law that inquiry and answer if made, would bar conviction.

Criminal Law—Requested Instruction to Acquit if Bank-books Show Check on Which Indictment was Based to be Charged to Cashier Held Properly Refused as Erroneously Assuming Books Made by One not Party to Action to be Conclusive (§ 6187, Subd. [c], Or. L.).

20. In prosecution under Section 6187, subdivision (c), Or. L., for aiding in misapplication of bank funds to payment of a check drawn by defendant without funds in bank to meet it, requested instruction to acquit if defendant's check was charged on books of bank against cashier held properly refused as erroneously assuming books to be conclusive evidence, which they were not, since made by one not party to action.

Criminal Law—Requested Instruction That There is no Evidence of Wrongful Intent on Defendant's Part Held Properly Refused as not so Appearing as Matter of Law.

21. Requested instruction that there is no evidence of wrongful intent on part of defendant held properly refused, where from evidence it could not be said as matter of law that there was no evidence of wrongful intent.

Criminal Law—Instruction to Convict if Cashier is Guilty of Misapplying Bank Funds and Defendant Aided Him Held Not Erroneous as Permitting Founding of Inference upon Inference (§ 796, and § 6187, Subd. [c], Or. L.).

22. In prosecution under Section 6187, subdivision (c), Or. L., for aiding in misapplication of bank funds to payment of a check drawn by defendant without funds in bank to meet it, instruction

that defendant is guilty of crime charged, if jury finds that cashier committed offense and that defendant aided him, was not erroneous as permitting jury to found an inference upon an inference contrary to Section 796, Or. L., since guilt of cashier was required to be proved as fact before defendant's guilt could be found.

**Criminal Law—Assignment of Error, Failing to Specify Part of Requested Instruction Actually Given and Objected to cannot be Considered.**

23. Where only part of state's requested instruction was given, assignment of error thereto, not specifying particular part given and objected to, cannot be considered.

**Criminal Law—Rights of Defendant, Sentenced to not More Than Three Years for Crime on Which Maximum Penalty was Twenty Years, Held not Infringed by Law Requiring Sentence to State Maximum Penalty Only, Taking Effect After Indictment and Amending Law Prohibiting Minimum Sentence to Exceed One-half of Maximum (Laws 1911, p. 242, § 24 [§ 6187, Subd. (c) Or. L.]; Laws of 1917, p. 624; Laws 1919, p. 207).**

24. Where defendant was sentenced to imprisonment not to exceed three years under Act of February 23, 1911, page 242, Section 24 (Section 6187, subdivision (c), Or. L.), carrying penalty of not less than one nor more than twenty years, no right of defendant was infringed by Laws of 1919, page 207, taking effect after indictment providing only for statement of maximum penalty not to exceed maximum term for particular crime which amended Laws of 1917, page 624, in force at time of indictment requiring sentence to state minimum and maximum period but minimum not to exceed one-half of maximum.

**Embezzlement—Question as to Defendant's Intent to Aid in Misapplication of Bank's Funds Held for Jury (§ 6187, Subd. [c], Or. L.).**

25. In prosecution under Section 6187, subdivision (c), Or. L., for aiding and abetting bank cashier in misapplying bank funds, question of defendant's intent to aid in misapplication of funds is for jury.

Criminal Law, 16 C. J., p. 81, n. 63, p. 128, n. 63, 64, p. 144, n. 61, 63, p. 163, n. 29, 30, p. 164, n. 32, p. 175, n. 67, 68, 70, p. 534, n. 33, p. 701, n. 22, 25, p. 704, n. 33, 35, p. 711, n. 21, 23, p. 743, n. 86 New, p. 949, n. 96, p. 1001, n. 2, p. 1036, n. 65, p. 1049, n. 82, p. 1050, n. 84, p. 1063, n. 85, p. 1066, n. 86, 89; 17 C. J., p. 86, n. 31, p. 359, n. 64.

Embezzlement, 20 C. J., p. 433, n. 63, p. 457, n. 56, p. 459, n. 68, p. 486, n. 60, p. 487, n. 65, p. 488, n. 71, p. 489, n. 74, 77, p. 490, n. 84, p. 493, n. 19 New.

Indictments and Informations, 31 C. J., p. 708, n. 29.

From Jackson: F. M. CALKINS, Judge.

In Banc.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Reames & Reames,* with an oral argument by *Mr. A. E. Reames.*

For respondent there was a brief over the name of *Mr. Rawles Moore,* with oral arguments by *Mr. Clarence D. Phillips* and *Mr. Newton C. Chaney.*

BURNETT, J.—The defendant was indicted by the grand jury of Jackson County, Oregon, under subdivision (c) of Section 6187, Or. L., for aiding and abetting the cashier of the Bank of Jacksonville in that county in wilfully misapplying to the advantage of the defendant certain moneys, funds, credits and property of the bank of the amount and value of $100. After stating in the indictment what the cashier did, which in substance was that he paid a check for that amount drawn on the bank by the defendant, knowing that the latter had no moneys, funds, credits or property in the bank applicable to the payment of the check and was not entitled to draw from the bank $100 or any portion thereof, the indictment charged:

"That said C. H. Owen, on the 3rd day of April, 1919, in the County of Jackson, State of Oregon, then and there being did then and there wrongfully, unlawfully, feloniously and wilfully and with intent to injure said bank aid, abet, incite, counsel and procure the said W. H. Johnson, officer and cashier as aforesaid, to convert and wilfully misapply the moneys, funds, credits and property of said bank in manner and form as aforesaid, contrary to the statutes in such cases made and provided," etc.

The defendant demurred to the indictment on the ground that it did not state facts sufficient to constitute a crime, but the demurrer was overruled. At

the trial, on a plea of not guilty, he likewise objected on the same ground to the introduction of any testimony in support of the indictment, but this objection was disregarded. He was convicted and sentenced to imprisonment in the penitentiary "for a period not to exceed three years." Hence his appeal.

The clause of the statute under which the indictment is drawn reads thus:

"(c) *Embezzlement.* Every owner, officer, director or employee of any bank who embezzles, abstracts or wilfully misapplies any of the money, funds, credits, assets or property of the bank, whether owned by such bank or held in trust, or who without authority of the board of directors of such bank issues or puts forth any certificate of deposit, draws any order, draft or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill, bill of exchange, mortgage, judgment or decree, or who makes any false entry in the books or statements of the bank with intent in either case to injure or defraud the bank or deceive any officer of such bank or any other person appointed to examine the affairs of said bank or any person who with like intent aids or abets any owner, officer, director or employee of any bank in the violation of this section, upon conviction thereof, shall be imprisoned in the state penitentiary for not less than one year or more than twenty years, at the discretion of the court."

1. The indictment follows the words of the statute, sufficiently informs the defendant of the nature of the crime charged against him and is a valid accusation within the meaning of *State* v. *Kubli,* this day decided, sustaining a similar pleading.

The testimony shows that on March 25, 1919, the defendant was in San Francisco, California, and there drew the check in question, addressed to the

Bank of Jacksonville, Jacksonville, Oregon, request-
ing it to pay to the order of "Cash" $100. He
negotiated the check in San Francisco by cashing it
at the hotel St. Francis in that city. In due course
of business it arrived in Oregon, where it was first
paid in money at a bank in Portland, Multnomah
County, Oregon, out of funds on deposit there to
the credit of the Jacksonville bank. Later, however,
it was forwarded to the latter bank and the cashier
took it up by forwarding a draft to the Portland
bank covering the check.

The defendant Owen never returned to Oregon
after drawing the check in question, but went to
live in the State of Utah. From there he was extra-
dited on the request of the Governor of Oregon, was
surrendered by the Utah authorities and brought
into this state and tried as stated. Section 1381,
Or. L., reads thus:

"When the commission of a crime commenced out-
side this state is consummated within its boundaries,
the defendant is liable to punishment therefor in this
state if he be afterwards found therein, though he
were out of the state at the time of the commis-
sion of the crime charged, provided he consummated
it in this state, through the intervention of an in-
nocent or guilty agent, or by means proceeding di-
rectly from himself; and in such case the action
therefor may be commenced and tried in the county
in which the offense is consummated."

2, 3. We recollect that according to the indict-
ment the cashier in charge of the bank in Jackson-
ville was a principal, and it is alleged that he mis-
applied the funds of the bank to the payment of this
check. It was at the bank in Jackson County that
the crime was consummated. When the check was
presented there and the funds applied the transac-

tion was at an end and was there consummated. It is true that the part of the defendant Owen in the transaction was commenced in the State of California by there drawing the check. It is competent for the legislative power of the state to protect its citizens against such acts and to make it a crime for one out of the state to aid and abet another in the state in the commission of the offense thus created. As said in *Commonwealth* v. *Macloon,* 101 Mass. 1 (100 Am. Dec. 89), speaking of a similar statute:

"This statute is founded upon the general power of the legislature, except so far as restrained by the constitutions of the commonwealth and of the United States, to declare any wilful or negligent act which causes an injury to person or property within its territory to be a crime, and to provide for the punishment of the offender upon being apprehended within its jurisdiction."

In *Simpson* v. *State,* 92 Ga. 41 (17 S. E. 984, 44 Am. St. Rep. 80, 22 L. R. A. 248), it is held that a criminal act begun in one state and completed in another renders the person who does the act liable to indictment in the latter state. It is likewise said in *State* v. *Hall,* 114 N. C. 909 (19 S. E. 602, 41 Am. St. Rep. 822, 28 L. R. A. 59):

"The well-established theory of the law is, that where one puts in force an agency for the commission of crime, he in legal contemplation accompanies the same to the point where it becomes effectual. * * "

In *Commonwealth* v. *Pettes,* 114 Mass. 307, it was held that letters written by the defendant in another state for the purpose of assisting in passing a forged check, but received in the county of Suffolk, in Massachusetts, and having effect there constituted acts

which were in intendment of law committed in the county of Suffolk, and which might be so alleged in the indictment. Section 1381, Or. L., is a statutory declaration of the precepts announced in these precedents and is a valid exercise of the law-making power.

4. The defendant complains that the Circuit Court of Jackson County had no authority to bring him to trial because he had not fled from justice within the meaning of Section 2 of Article IV of the national Constitution, having never been in Oregon since long prior to the drawing of the check upon which the indictment is based. He contends that having been extradited from Utah and brought to Oregon by force, he was not "found" in the latter state within the scope of Section 1381, *supra*. The courts of the state having actual custody of a defendant for trial on a charge of violating its criminal laws will not concern themselves in the trial of such charges about how he happened to be within the boundaries of the state. In *Pettibone* v. *Nichols,* 203 U. S. 192 (51 L. Ed. 148, 7 Ann. Cas. 1047, 27 Sup. Ct. Rep. 111, see, also, Rose's U. S. Notes), the defendants were accused of the crime of murder in Idaho. They were residents of Colorado and had not been in Idaho at any time between the date of their extradition and long before the commission of the crime. The Governor of Idaho demanded of the Governor of Colorado that he deliver them to the agents of Idaho, and they were surrendered accordingly and rushed by railroad into Idaho without having any opportunity in Colorado to test the legality of the extradition by *habeas corpus* or otherwise. The Supreme Court of the United States, where the matter was

finally taken on *habeas corpus* proceedings begun in Idaho, said:

"It is settled that a party is not excused from answering to the State whose laws he has violated because violence has been done him in bringing him within the State."

It was held also that the result is the same if the transportation is accomplished under the form of law.

In the case of *In re Johnson,* 167 U. S. 120 (42 L. Ed. 103, 17 Sup. Ct. Rep. 735, see, also, Rose's U. S. Notes), it was said:

"The law will not permit a person to be kidnapped or decoyed within the jurisdiction for the purpose of being compelled to answer to a mere private claim, but in criminal cases the interests of the public override that which is, after all, a mere privilege from arrest."

In *Mahon* v. *Justice,* 127 U. S. 700 (32 L. Ed. 283, 8 Sup. Ct. Rep. 1204), Mahon, being under indictment in Kentucky, was abducted from West Virginia by a mob of lawless persons and carried to Kentucky. In the latter state he was arrested by virtue of its regular criminal process for trial. The United States Supreme Court, in an opinion by Mr. Justice FIELD, said:

"The jurisdiction of the court in which the indictment is found, is not impaired by the manner in which the accused is brought before it."

*Ker* v. *Illinois,* 119 U. S. 437 (30 L. Ed. 421, 7 Sup. Ct. Rep. 225), it was a case where an agent of the United States, armed with an extradition warrant, went to Peru to receive Ker as a prisoner, but without use of the warrant kidnaped him and took him first to the Hawaiian Islands and thence to San

Francisco, where he met an agent of Illinois acting under interstate extradition proceedings between that state and California. He was returned to Illinois in custody of the agent, tried and convicted. The legality of his capture availed him nothing in his defense against the indictment in Illinois.

In *State* v. *Ross,* 21 Iowa, 467, the court said, respecting the defendants:

"The liability of the parties arresting them without legal warrant, for false imprisonment or otherwise, and their violation of the penal statutes of Missouri, may be ever so clear, and yet the prisoners not be entitled to their discharge. The offense being committed in Iowa, it was punishable here, and an indictment could have been found without reference to the arrest. There is no fair analogy between civil and criminal cases in this respect. In the one (civil) the party invoking the aid of the court is guilty of fraud or violence in bringing the defendant or his property within the jurisdiction of the court. In the other (criminal) the people, the State, is guilty of no wrong. The officers of the law take the requisite process, find the persons charged within the jurisdiction, and this, too, without force, wrong, fraud, or violence on the part of any agent of the State, or officer thereof. And it can make no difference whether the illegal arrest was made in another State or another government. The violation of the law of the other sovereignty, so far as entitled to weight, would be the same in principle in the one case as the other. That our own laws have been violated is sufficiently shown by the indictment. For this the State had a right to detain the prisoners, and it is of no importance how or where their capture was affected."

In *State* v. *Brewster,* 7 Vt. 118, it was said:

"Being retaken and brought in fact within our jurisdiction, it is not for us to inquire by what means or in what precise manner he may have been brought within the reach of justice."

See, also, *In re Moore*, 75 Fed. 821; *State* v. *Smith*, 1 Bail. (S. C.) 283 (19 Am. Dec. 679); *State* v. *Kealy*, 89 Iowa, 94 (56 N. W. 283); *People* v. *Pratt*, 78 Cal. 345 (20 Pac. 731). The distinction noted in *State* v. *Ross* between civil and criminal proceedings disposes of the case of *Bramwell* v. *Owen*, 276 Fed. 36, cited by the defendant, where Judge WOLVERTON of the United States District Court quashed the service of summons and dismissed a civil case where the summons was served upon this defendant while present in the state under force of this same extradition above described. The fact that the *Bramwell* v. *Owen* case was of civil cognizance differentiates it from the instant criminal charge.

5. In *Jones* v. *Leonard*, 50 Iowa, 106 (32 Am. Rep. 116), the petitioner for *habeas corpus* was always in Iowa. From there he wrote to a Massachusetts merchant a letter containing false pretenses by which he obtained goods from the merchant. Upon being arrested in Iowa he successfully contested the charge that he was a fugitive from justice. So in this case, if the defendant had resisted in Utah the accusation that he was a fugitive from justice and hence not subject to extradition, the result might have been different and he might have escaped arrest. At any rate, our courts are not concerned in the enforcement of the laws of Utah against kidnaping if any such there are. The task at hand is the trial of an indicted defendant in actual custody within the State of Oregon. The principle is that when the defendant is in the state he is in the state, irrespective of how he came or was brought there. The court does not uphold mob violence or abduction or anything of the kind. If such an act were a crime it was criminal in Utah and perchance would be here if it were con-

tinued here, and the law will punish such an act, but that does not necessarily mean that the criminal act of bringing the defendant here would excuse his own crime for which he must answer when he is actually here.

6. We conclude, therefore, that the court had jurisdiction of the person of the defendant upon a proper indictment, charging him with a crime. Analyzing the indictment and the statute under which it was drawn, we observe that it is necessary to establish the guilt of the cashier of the things charged against him in the present indictment, and not only so but also to prove the criminal participation of the present defendant in aiding and abetting the cashier in the commisson of his offense. The situation presented is one where the state was compelled to proceed *pro tanto,* so to speak, as if the cashier himself were present as defendant, answering a charge directly against himself. If and when his guilt was established, it was necessary to go further and show that the defendant aided and abetted the cashier in his criminal act.

There are twenty-seven assignments of error, chiefly relating to the admissibility of evidence against the cashier, but as stated, it was a necessary element in the prosecution of this case to show that the cashier was guilty and then, so far as the defendant was concerned, to show additionally that he aided and abetted the cashier. No effort was made by the defendant to have the court restrict that kind of evidence to the question of showing the guilt of the cashier.

7. We next proceed to consider the question of aiding and abetting the cashier. It is necessary in a charge of this kind to show that the aider and

abetter, the defendant in the present indictment, had some knowledge of the criminal enterprise carried on by the principal offender, the cashier in this instance. Indeed, the statute under which the charge is framed requires the aider and abetter to be actuated with like intent imputed to the offending bank officer. As said in 16 C. J. 128:

"For one to be guilty as principal in the second degree, it is essential that he share in the criminal intent of the principal in the first degree; the same criminal intent must exist in the minds of both. There must be a community of unlawful purpose at the time that the act is committed, and even when there is a common unlawful purpose acts done by one, not in pursuance of the criminal scheme or conspiracy, will not render the other liable."

The offense charged against the cashier was that of misapplying the funds of the bank, in that he paid the check of the defendant when there were no funds applicable thereto. There is testimony even on behalf of the state to the effect that for several years the defendant Owen and the cashier of the bank, Johnson, had been engaged as partners in the business of buying and selling real estate, in which each was to pay his share of the expenses incident to the enterprise. Owen was the most active in the transactions and from time to time, as he incurred expenses for the concern, he called on Johnson to pay his portion. At the outset he drew drafts on Johnson for the purpose, but the latter objected to that method on the ground that it put him to the trouble and inconvenience of leaving his bank at Jacksonville and going to Medford for the purpose of paying the drafts through the Medford banks, and moreover that he desired to keep people from knowing his private business. He also promised that in

all such cases if Owen would draw checks on the
Jacksonville bank for Johnson's part of the expenses
of the partnership deals, the latter would immedi-
ately deposit money therein for their payment. · To
this scheme Owen agreed. The only witnesses testi-
fying on that subject were Johnson, produced by the
state as its witness, and Owen, himself, testifying
in his own defense. If this were all the testimony
and were believed by the jury it would spell a verdict
for Owen, for in the absence of knowledge to the
contrary he would have a right to rely upon the con-
tract of the bank officer to provide funds to meet his
share of expenses in the private transactions be-
tween Owen and the officer. But this is not all the
testimony. We reiterate that the essence of the
crime charged is that of misapplication of the funds
of the bank to the payment of a check, when the
drawer had no funds or credits in the bank ap-
plicable to the payment thereof; that this misappli-
cation was the immediate act of the bank officer and
that so far as the defendant is concerned he is
charged with aiding and abetting the officer in the
particular misapplication described in the indict-
ment. With this in mind, we next proceed to deter-
mine whether there is any evidence that the de-
fendant, in the words of the indictment: "did then
and there wrongfully, unlawfully, feloniously and
wilfully, and with intent to injure and defraud said
bank, aid, abet, incite, counsel and procure the said
W. H. Johnson, officer and cashier as aforesaid," in
the misapplication of the funds as described in the
charge. The defense does not pretend that the de-
fendant actually had money on deposit in the bank
at the time he drew the check. The essence of his
contention is that he relied upon Johnson's promise

to supply funds to cover the checks which he drew for the latter's share of the land ventures. Upwards of 220 checks of the defendant were introduced in evidence, all drawn upon the Bank of Jacksonville. Johnson testified that at the time the check directly in question was drawn, the defendant owed the bank about $20,000, principally upon overdrafts; that the defendant would draw checks upon the Bank of Jacksonville, and that was what he called about mostly when he talked by long distance telephone, and that at various times Johnson either raised objections to the payment or had to make Owen promise to get the money in to meet these checks. Johnson also testified that the defendant here knew that the former did not possess the financial ability to carry on their various land projects; that Johnson paid money out of the funds of the bank on some notes; that while he did not know whether Owen knew the source from which he paid the money, yet he did know that Johnson did not have the money, because the latter told him he did not have money to pay them unless Owen would manage to get the money before they became due. Johnson also gave the following testimony:

"Q. Did you tell him anything prior to these conversations of your inability to meet them personally? [Referring to the checks already mentioned.]

"A. Yes, he knew. I had told him I could not meet them personally and that he should send at least $10,000, and he promised to send that amount.

"Q. Did he ever send it?

"A. No, he never sent it.

"Q. Did you, as a matter of fact, pay out the sums of money out of these checks and otherwise in his business from the funds of the bank when he did not have any deposits there?

"A. Yes, sir.

"Q. What did he promise you, if anything, with reference to repaying the bank?

"A. Well, he promised at various times when he wanted to draw money to send money to cover, and also promised as soon as this land deal was completed to get plenty of money in to take care of all the obligations that was necessary that he owed.

"Q. Did he from beginning to end ever fulfill any of these accounts?

"A. Well, very few of them. * *

"Q. Did Owen know at the time he was drawing these checks that he did not have a deposit?

"A. Yes, he knew he did not have any funds to cash these checks. * *

"Q. State how it was that you came to advance to Owen these sums of money until the aggregate amounted up the way that it did?

"A. Well, it was on account of the various propositions which he was carrying on for the purpose of getting in some of the money and the fact that considerable amount had been advanced seemed to make it necessary to take care of him in some way in order that he might eventually be enabled to square up on the whole thing. * * On the advances he promised to remit sums at fixed times when checks were cashed when he needed expense money, and also represented right along that, when this final land transaction was carried through to a successful issue, there would be plenty of money to take care of everything. * * On certain items, he promised to take care of them within a few days, according to the letters and telephone messages. * *

"Q. He never came through on his promises then?
"A. No."

8, 9. From these quotations from the testimony of Johnson there is presented at least a situation where it became a question for the jury to determine whether the defendant knew that the condition of his finances was such that the drawing of this check .on the bank, and the payment thereof, would

result in injury to the bank. An overdraft is not necessarily and conclusively, as a matter of law, a violation of the statute. It is possible for a drawer of undoubted financial soundness inadvertently to overdraw his account. Again, it would be possible for a rich scoundrel, by drawing his check upon the bank, to aid the officer in the misapplication of the funds. On the other hand, the officer in charge of the bank funds would be clearly guilty of a misapplication of them if he handed them out to every beggar that came along asking for money.

10, 11. The essence of the crime, so far as the aider and abetter is concerned, is the intent attaching to his transaction. Any defendant is presumed to intend the ordinary consequences of his own voluntary act, and in the present instance if, with the knowledge of his enlarged overdraft and of his inability to meet it, the defendant drew the check in question, knowing that the ordinary result of paying the same would be eventually to cause the bank to lose the amount of the check, he would be presumed to intend that consequence. There is enough in the record to take the question to the jury and those twelve men were charged with the duty of determining from the testimony the truth of the accusation in the indictment. There was no error in submitting the matter to the jury for the determination of that question of fact as to the intent with which the admitted actions were performed.

12. The defendant assigns as error the refusal of the court to give the following instruction, numbered III among the requests, preferred by the defendant:

"If you believe from the evidence in the case that before the check mentioned in the indictment was cashed the hotel which cashed the check communicated with the bank or Johnson, its cashier, and was assured that the check, if drawn and cashed, would be met by the bank, then you must acquit the defendant unless the state has proved beyond a reasonable doubt that the defendant in drawing the check and cashing it, did so with the fraudulent intent of injuring and defrauding the bank. And it is necessary before there can be any conviction for you to find beyond a reasonable doubt that in drawing and cashing the check the defendant was intending to cheat and defraud the bank."

So far as this instruction refers to the act of the defendant and the intention involved therein, it was already given in a previous instruction also requested by the defendant.

13. Error is assigned in the refusal to give defendant's requested instruction numbered V:

"If at the time the check in question was drawn and cashed the defendant was overdrawn with the bank of Jacksonville in any sum, no matter however great, still you must acquit the defendant unless you believe from the evidence beyond a reasonable doubt that he knew or had good reason to believe that the check would be paid with the bank's funds and not with the funds or money belonging to Johnson."

In relation to this request it may be recalled that every check on a bank is a request to pay an amount out of the bank's funds. Its legality depends upon whether the bank owes the drawer the amount of the check or extends credit to him on good faith. This request as framed would have been confusing to the jury.

The defendant excepted to the refusal of the court to give to the jury the requested instruction XIII, reading thus:

"There has been produced in evidence a large number of checks said to represent a considerable amount of money and which the state claims are the checks of the defendant. But I instruct you that you have nothing whatever to do with these checks or with the amount of any indebtedness or overdraft they may, according to the claims of the state, represent, except to consider them in dealing with the intention which the defendant had when he drew and cashed the check described in the indictment and although he might have drawn many checks against the bank of Jacksonville and at times when he had no funds in said bank, nevertheless unless the state has proved beyond a reasonable doubt that the particular check described in the indictment was drawn and cashed by the defendant with the intention to injure and defraud the bank of Jacksonville, and unless you believe that the defendant aided and abetted the cashier of that bank to wrongfully misapply its funds in the payment of that particular check, it is not only your right, but it is your plain duty to find the defendant not guilty."

All the elements of this request are appropriately embodied in the charge actually given by the court and there was no error in the refusal of this form.

14. Requested instruction by the defendant numbered XIV reads thus:

"Under some circumstances when two or more persons are engaged in doing some unlawful thing, they are called accomplices. Under such circumstances they may both be guilty, or only one of them may be guilty. And if one of them admits his guilt and furnishes testimony against the other, and there is no evidence to support his testimony you would then have what we call the unsupported evidence of an

accomplice. You would have no right whatever to convict the defendant upon the unsupported evidence of an accomplice. And even though you believe Johnson guilty of the things alleged in the indictment against him, nevertheless you could not convict Owen upon the unsupported testimony of Johnson. And if there were nothing to support Johnson's testimony upon a material and important element in the case you would have to acquit the defendant even though you might believe the testimony of Johnson.''

It is erroneous to say, as in this request, that where two or more persons are engaged in doing some unlawful thing, "they may both be guilty, or only one of them may be guilty," because if both are engaged in it they are both participants in the unlawful act mentioned. This request was properly refused. Besides this, the jury was otherwise correctly instructed about the testimony of an accomplice.

15. The fifteenth request of the defendant is here set down.

"As I have said if Johnson was an accomplice under the instructions given you and he testified in this case against the defendant and if his testimony is unsupported upon any material fact by other evidence then you must acquit the defendant even though you might under all circumstances be disposed to believe the testimony of Johnson, the accomplice. For, as I have said, there can never be a conviction upon the unsupported evidence of an accomplice no matter what impression that evidence might make upon the minds of the jury. In the law an accomplice stands in such a light that he is not himself alone worthy of belief. But the law requires something else to support his testimony wherever it bears upon a material and necessary averment in the indictment.''

This request is erroneous in requiring the acquittal of the defendant if the testimony of the accomplice

"is unsupported upon any material fact by other evidence." This would require the state to make out at least a *prima facie* case independent of the testimony of the accomplice, whereas Section 1540, Or. L., on that subject, does not go so far. It reads thus:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime, or the circumstances of the commission."

16. It would not be enough to show that someone undisclosed by the testimony had misapplied the funds of the bank and it would not be sufficient if the testimony of the accomplice cashier alone was all the evidence tending to show that the defendant aided and abetted in the misapplication. It is required by this section that the accomplice be "corroborated" by such other evidence as tends to connect the defendant with the commission of the crime. That is the extent of the corroboration required by the statute. There was evidence showing the commission of the crime and the circumstances of the commission. There was also evidence in the form of the check admittedly drawn and signed by the defendant and which was paid out of the funds of the bank which is sufficient to show a connection of the defendant with the misapplication of the funds to the payment of that self-same check. The law in this state does not require that a crime shall be demonstrated to the jury beyond a reasonable doubt only by testimony other than the testimony of the accomplice. It is permissible to rely upon his testimony if he is corroborated by evidence tending to connect the defendant in some way with the commission of the crime.

17. Request XVI is as follows:

"If, under the instructions I have given you, the evidence shows that Johnson, the cashier, was an accomplice in the commission of the acts charged in the indictment, you must understand that because of his being such an accomplice it is not within his power to furnish any evidence that would be sufficient in itself, and unsupported, to justify a verdict against the defendant."

It is erroneous to say that it is not within the power of an accomplice to furnish any evidence that would be sufficient in itself and unsupported to justify a verdict against the defendant. An accomplice might furnish written admissions of the defendant and many other pieces of evidence and not testify as a witness at all, yet come within the scope of this request. There is a distinction between testifying and furnishing evidence.

18. Requests XVII and XVIII are faulty in requiring the testimony of an accomplice to be corroborated at every point, and stating the rule too broadly as to the support of an accomplice.

19. The defendant also complains of the court's refusal to give instruction numbered XXII, as follows:

"There has been some evidence tending to show that the hotel which cashed the check communicated with the bank of Jacksonville before it cashed it and that the bank gave its authority and consent for the issuance of the check and undertook to take care of it. If that is the case you must acquit the defendant because it would show not only an authority for Owen's act, but it would show that the check was not drawn and cashed with any intent upon the part of Owen to cause the cashier to fraudulently misapply the funds of the bank."

This instruction would make the inquiry and answer from the bank by telephone conclusive of the matter, but, on the other hand, this inquiry and the answer thereto would be possible even if Johnson and Owen were in fact in active conspiracy to loot the bank. Under such circumstances it would be easy for them to prove that the one inquired and the other answered favorably to the inquiry when in fact they were engaged in a systematic scheme to defraud the bank. The request invades the province of the jury and declares as a matter of law that the inquiry and answer, if made as stated, would be a bar to conviction.

20. We here consider the defendant's requested instruction "C."

"The witness Kahler testified for the state that practically all of the checks produced by the state to show overdraft by defendant were cashed out of Johnson's account and by Johnson charged to Johnson's account. If you believe this to be the fact you must acquit because the money in the first instance came from Johnson and the question would then be between Johnson and the Bank and Owen would not be connected with it.

"If Owen's check introduced here were charged on the books of the bank against Johnson, then you must acquit, for there is no charge in the indictment that the books were wrongfully kept."

This involves the effect of the books of the bank and is erroneous because it assumes to make the books conclusive evidence. In *Radtke* v. *Taylor,* 105 Or. 559 (210 Pac. 863, 27 A. L. R. 1423), it was held that:

"The general rule is that entries of a third person of transactions between such third person and others not parties to the litigation, or one of the

parties litigant are not admissible because they are hearsay and *res inter alios acta."*

The parties to this litigation are the State of Oregon, as plaintiff, and Owen, as defendant. The books sought to be introduced and upon which this instruction is based were those kept by Johnson in his capacity as manager of the bank, were not shown to be correctly kept, but, on the contrary, were admittedly erroneous in many respects and being the books of a third party were not conclusive in evidence either in favor of Owen or against him.

21. Likewise defendant complains that his requested instruction "D" was not given. It reads thus:

"There is no evidence before you of any wrongful intent on Owen's part; on the contrary all of the evidence is the other way, and unless you believe beyond a reasonable doubt that Owen had, in the drawing of the check mentioned in the indictment an intention to defraud the bank you must acquit."

What has been quoted heretofore from the testimony respecting Owen's knowledge of his financial condition and of his account with the bank and the overdraft disposes of this request because with the excerpt from the testimony in mind we cannot say as a matter of law that there was no evidence of any wrongful intent on the part of Owen.

22. The defendant complains about the court giving the state's requested instruction numbered 1, as follows:

"By the indictment in this case, W. H. Johnson is charged with having wilfully misapplied the money, funds, credits, and property of the bank of Jacksonville, and the defendant, C. H. Owen, is charged with aiding and abetting Johnson in the commission of the

offense.    An 'aider and abetter' is one who advises, counsels, procures, or encourages another to commit a crime, whether personally present or not, at the time and place of the commission of the offense; and the defendant, C. H. Owen, would be guilty of the crime charged in the indictment, if the jury finds that W. H. Johnson had committed the offense charged therein, and that C. H. Owen had advised, counseled, procured, or encouraged W. H. Johnson to commit the alleged crime.    You will observe from this definition of aiding and abetting, that the defendant C. H. Owen could not be convicted of aiding and abetting W. H. Johnson, if W. H. Johnson himself was not guilty of committing the crime, in the commission of which it is charged that C. H. Owen aided and abetted.''

In argument the defendant contends that this direction permits the jury to found an inference upon an inference, contrary to the Code, Section 796, Or. L., and *State* v. *Hembree,* 54 Or. 463 (103 Pac. 1008). The charge immediately under consideration is not subject to that criticism.    The guilt of the defendant is not made to depend upon any mere inference of the guilt of Johnson but upon the actual fact of his guilt as a condition precedent as established by the testimony beyond a reasonable doubt.    And not only so, but the state was required by other instructions to go further and prove Owen's aiding and abetting beyond a reasonable doubt.    Taken as a whole, the state's request number 1 was favorable to the defendant.

23. The defendant also excepts to the giving of the state's request number 2, but a careful comparison shows that much of that request was not given at all.    Under such circumstances the defendant should have specifically pointed out the part of what was actually given and to which he objected.

As it is we cannot consider the assignment of error on this point.

24. Finally, the defendant complains that the defendant was sentenced to imprisonment in the penitentiary for a term of not to exceed three years, under a statute which was not in force at the time of the commission of the criminal act described in the indictment. Ever since the act of February 23, 1911, codified in part in Section 6187, Or. L., the penalty for violation of the statute relating to misapplication of the funds of a bank has been imprisonment in the state penitentiary for not less than one year or more than twenty years, at the discretion of the court. As a landmark in the chronology we remember that it is charged in the indictment that the crime was committed April 3, 1919. By Chapter 302 of the Laws of 1917, the minimum period of imprisonment in the penitentiary in general for all felonies, with a few exceptions not here involved, was abolished and in instances of the kind here at hand the court was required to sentence the convicted defendant to imprisonment in the penitentiary without limitation of time, stating, however, a maximum period which should not exceed the maximum period provided by the statute as penalty for the particular crime, and a minimum not to exceed one half of the maximum. The legislature of 1919, in Chapter 150 of the laws of that session, amended the law of 1917, abolishing the minimum sentence, and required that the trial court should pronounce sentence without limitation, stating only a maximum penalty not to exceed the maximum term of imprisonment provided by law. Although enacted prior to the commission of the offense, as charged, this latter act did not take effect until after the date named in the indictment.

In the enactments thus far mentioned the only difference was that under the 1917 statute both a maximum and a minimum as there described should be noted in the judgment, while in the sentence provided for by the 1919 statute only a maximum penalty is required to be mentioned. In this instance, the sentence to imprisonment "for a period of not to exceed three years" is responsive to both the provisions of the Statutes of 1917 and those of 1919. Applying the Statute of 1917 we find that the three years does not exceed the maximum of twenty years provided in the statute alleged to have been violated. Neither does it exceed one half of that term. Likewise, if we apply the law of 1919 we observe that three years does not exceed the maximum term of twenty years provided by the statute which the sentence is said to have violated. The original penalty of the law of not less than one nor more than twenty years has never been changed. All the legislation of 1917 and 1919 relates only to the manner in which the trial court exercises its discretion about the term of imprisonment. No right of the defendant has been infringed. The punishment is not increased and there is nothing of which he has cause to complain in that respect.

25. Careful attention has been given to a voluminous and complicated record in this case. A few assignments of error have been left out of consideration because they were not deemed to be of any importance. The principal proposition is whether there was any evidence of an intent on the part of the defendant to aid and abet the cashier in the misapplication of the funds. It was a question for the jury and there was evidence from which it could conclude legitimately that the defendant knew he

had no right to draw a check against that bank and that the natural consequences of that act, if the check were paid, would be to deplete the funds of the bank to the injury of the concern.

There is no material error in the proceedings of the Circuit Court resulting in the judgment of conviction and it is therefore affirmed.

AFFIRMED.    REHEARING DENIED.