## Ex parte LOPEZ.

No. 480.

District Court, S. D. Texas, Laredo Division.

Feb. 20, 1934.

---

[1] Jury trial; no opinion.

M. J. Raymond, of Laredo, Tex., for petitioner Lopez.

H. M. Holden, U. S. Atty., and M. S. McCorquodale, Asst. U. S. Atty., both of Houston, Tex., for respondent Keene.

M. C. Gonzales, of San Antonio, Tex., for intervener government of Mexico.

KENNERLY, District Judge.

This is a hearing on petition of Luis Lopez for the writ of habeas corpus.

The facts are as follows:

(a) Lopez stands charged by indictment in the United States District Court for the Western District of Texas, at San Antonio, with violation of the United States narcotic laws. He was under bond to appear early in January, 1934, before that court to answer to such indictment. He did not appear, and his bond was forfeited. Thereafter, an affidavit was filed with a United States commissioner at Laredo, in this district, charging petitioner to be a fugitive from justice, and the commissioner issued a warrant for petitioner's arrest. He was arrested on or about January 20, 1934, by Deputy United States Marshal Keene, at Laredo, and carried before the commissioner, and is now held in custody of such deputy marshal under process issued by the commissioner, awaiting order of removal to the Western district for trial under such indictment.

(b) January 23, 1934, petitioner filed in the state court his petition for the writ of habeas corpus, and, upon application of Deputy Marshal Keene, the case has been removed into this court. Counsel for petitioner concedes that the case is properly here, and petitioner on January 31, 1934, filed in this court, his amended petition for the writ of habeas corpus. In such amended petition petitioner sets forth that he is a citizen of Mexico, and that on or about January 20, 1934, while he was in Nuevo Laredo in Mexico, he was seized by four men and forcibly brought across the Rio Grande (the international boundary between the United States and Mexico) into the United States, and there arrested by such deputy marshal, as stated. He prays for the writ of habeas corpus, and that he be discharged.

February 10, 1934, the government of Mexico intervened, making substantially the same allegations as are made by petitioner, and setting up existing treaties between intervener and the United States of America, and praying that petitioner be surrendered to the custody of intervener. Such allegations are in part as follows:

"Where he will be detained and held under provisional arrest, if requested, pending further disposition in accordance with the form and procedure in such cases made and provided, under and by virtue of the Treaty between said Governments; all to the end that the friendly relations existing between the Government of the United States of America and the United States of Mexico may continue unimpaired by reason of the unhappy occurrence of the invasion of the sovereignty of Intervenor, and the abduction of one of its citizens from its soil, and that the solemn compact between said governments may not be nullified by the unlawful and illegal acts of individual citizens of either of said governments."

Respondent (Deputy Marshal Keene) demurs to petitioner's petition, and in answer thereto, and to such intervention, sets forth that he holds petitioner in custody under such process issued by the commissioner, awaiting removal to the Western district for trial under such indictment.

(c) It is shown that petitioner's parents were born in Mexico. When they came to the United States is not shown, except that they came before the birth of petitioner, and have resided in the United States at San Antonio, Tex., since before petitioner's birth. Petitioner was born in the United States at San Antonio, Tex., in 1893 or 1894. Soon after finishing school, he obtained a job as city fireman in the city of San Antonio, where he served some months. After leaving such employment as city fireman, he states that he went into the "bootlegging" business, in which business he has continued down to about the time of his indictment, except that during such period he has been three times

convicted and sent to the penitentiary for violation of the liquor and narcotic laws.

When petitioner was required to register under the United States draft laws during the World War, he claims that he registered as a Mexican citizen.

About October, 1933, petitioner left San Antonio and went to Nuevo Laredo, Mexico, across the river from Laredo, Tex. The evidence is not clear whether or not he purposed to remain there permanently. There is no evidence of any effort or proceedings to change his status as a citizen of the United States.

(d) About 9 p. m., January 20, 1934, petitioner, while at the place where he was stopping in Nuevo Laredo, was seized by four men and carried in an automobile to the Rio Grande, which forms the boundary line between Mexico and the United States. There he was compelled to hold to a tub, while two of the men towed him and the tub across the river to United States territory. His arrest by Deputy United States Marshal Keene, as stated above, followed. The only person whom petitioner was able to identify as being connected with these transactions was one Hernandez, a citizen of Mexico, and one Monterola, a captain in the Mexican Army and a citizen of Mexico. These were two of the four men. He also claims to have identified one Villarreal, a constable of Webb county, Tex., as being in company with Deputy Marshal Keene at the time he was arrested by Keene.

■ 1. That persons born in the United States (as was petitioner) are citizens of the United States need not be discussed. Section 1, article 14, of the Amendments to the United States Constitution. There is no evidence of a change of petitioner's citizenship.

■ 2. Therefore, as between petitioner and respondent, Keene, the facts present a case of a citizen of the United States charged with a violation of its laws seeking and obtaining an asylum in Mexico and being there seized by four men (two of whom at least were citizens of Mexico) and forcibly returned to the United States. The cases are practically all one way that petitioner may not, under such circumstances, be discharged in a habeas corpus proceeding. Ker v. Illinois, 119 U. S. 438, 7 S. Ct. 225, 30 L. Ed. 423 (See, also, Ex Parte Ker [C. C.] 18 F. 169); Mahon v. Justice, 127 U. S. 700, 8 S. Ct. 1204, 32 L. Ed. 287; Cook v. Hart, 146 U. S. 191, 13 S. Ct. 40, 36 L. Ed. 938; In re Johnson, 167 U. S. 120, 17 S. Ct. 735, 42 L. Ed. 103; Pettibone v. Nichols, 203 U. S. 217, 27 S. Ct. 111, 51 L. Ed. 159, 7 Ann. Cas. 1047; Ex Parte Morton Campbell (D. C.) 1 F. Supp. 899; U. S. ex rel. Voigt v. Toombs, 67 F.(2d) 744 (U. S. C. C. A. 5th, decided December 7, 1933).

■ 3. The intervention of the government of Mexico raises serious questions, involving the claimed violation of its sovereignty, which may well be presented to the Executive Department of the United States, but of which this court has no jurisdiction. State v. Brewster, 7 Vt. 121.

It follows that such intervention should be dismissed, the writ of habeas corpus denied, and the petitioner remanded to the custody of the marshal, to await an order of removal to the Western district, for trial under such indictment. Let an order be drawn and presented accordingly.